**STATE of Missouri, Respondent,**

v.

**Jose Erasmo CRESPO, Appellant.**

**No. 46901.**

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 6, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 24, 1984.

Application for Transfer Denied March 20, 1984.

**550**

Frank R. Fabbri, III, St. Louis, for appellant.

John Ashcroft, Atty. Gen., George W. Cox, III, Asst. Atty. Gen., Jefferson City, for respondent.

SNYDER, Judge.

Appellant was found guilty by a jury, convicted of capital murder, § 565.001 RSMo 1978, and sentenced to life imprisonment with the Missouri Department of Corrections without parole or probation for fifty years. He appeals. The judgment is affirmed.

Appellant contends the trial court erred in: (1) denying appellant's motion to suppress his statements; (2) denying his motion to suppress evidence of a .22 caliber rifle; (3) denying his motion in limine to suppress, and objections to, evidence of appellant's appearance on a public street with a rifle approximately one hour before the occurrence of the crime charged; (4) allowing the state to demonstrate and argue, over defense objection, a two-bullet hole, one-bullet theory; (5) granting the state's oral motion for a "protective order;" and (6) allowing the state on cross-examination to ask the victim "Didn't you tell [victim], after you shot him, don't die yet."

Because appellant does not challenge the sufficiency of the evidence, the facts may be briefly stated. The victim, to whom appellant apparently owed some money, came to appellant's house while appellant was gone and made death threats against appellant in the presence of his girl friend. When appellant returned home at about 2:00 a.m., his girl friend told appellant about the victim's visit. Appellant, taking a .22 caliber rifle from his house, went to the victim's house and after a brief argument, appellant shot and fatally wounded the victim.

■ Appellant's first point relied on charges trial court error in the denying of defendant's motion to suppress statements made by appellant after he was arrested. Appellant failed to preserve this error because he did not object to the admission of the testimony about the statement at the trial. Therefore, review of this point must be on a plain error basis under Rule 29.-12(b). This court finds there was no plain

error resulting in manifest injustice or miscarriage of justice.

Appellant sought to suppress two statements made during questioning by homicide Detectives Nichols and Scego. The first statement, an oral statement given willingly by appellant after he had been informed of his rights but before signing a form for the waiver of his rights, in effect admitted appellant's participation in the homicide but asserted that it was committed in self-defense. Appellant then signed the waiver form, but printed on it the words "I do not wish to make a statement." The second statement, another oral statement, was made after signing the waiver form and told the police of the location of the .22 caliber rifle.

The first issue is whether appellant asserted or waived his constitutional right to counsel before making the first statement. "In reviewing the trial court's determination on the motion to suppress, the weight of the evidence and credibility of witnesses are questions for the trial court's resolution." *State v. Boggs,* 634 S.W.2d 447, 453[4, 5] (Mo. banc 1982).

■ The testimony of the two key witnesses at the suppression hearing, appellant and Detective Nichols, was contradictory. Appellant testified that he was asked if he understood his rights and he replied that he did, and then appellant replied, "no" and informed the police that he "wanted to hold my Fifth Amendment until I see a lawyer." Detective Nichols on the contrary, said that the other detective present, Detective Scego, actually read appellant his rights and further testified that after appellant was informed of his rights he only indicated that he understood those rights, and "went on and explained what happened the previous a.m." The trial court was entitled to disbelieve appellant and believe Detective Nichols. *State v. Boggs, supra.* Thus, the trial court could have found that appellant never asserted his right to counsel before signing the waiver form. There was no plain error in admitting the first statement.

The next issue is whether appellant validly waived his right to remain silent after printing on the waiver form, "I do not wish to make a statement."

"The admissibility of statements obtained after a suspect has expressed a desire 'to remain silent depends under *Miranda* [v. *Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] on whether his right to cut off questioning was scrupulously honored.' *Michigan v. Mosely,* 423 U.S. 96, 103, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). If the suspect makes a statement after questioning has been cut off, the burden is on the state to show by a preponderance of the evidence that he has made a knowing waiver of the *Miranda* safeguards in order for that statement to be admissible. *State v. Olds,* 569 S.W.2d 745 (Mo. banc 1978). A suspect can effectively waive his right to remain silent as to any statement which he volunteers. *State v. Olds, supra.*" *State v. Battle,* 588 S.W.2d 65, 69 (Mo.App. 1979).

Here, Detectives Nichols and Scego scrupulously honored appellant's right to remain silent.

The officers ceased questioning appellant based on his written wish not to make a statement. The men continued to talk, the content of their conversation not appearing in the record, but one of the officers told appellant that because he had declined to make further statements they could no longer talk with him about the case. Appellant then said that he meant only taped or written statements. He declined to alter his written assertion that he did not wish to make a statement, saying, "Just let it stand." Appellant then proceeded to relate orally more details of the shooting and reveal the location of the rifle used to the detectives.

■ The evidence thus shows that appellant only refused to give taped or written statements. The mere fact that he declined to make a taped or written statement while continuing to talk and give oral statements to the police is not a violation of *Miranda.* See *State v. Bolder,* 635 S.W.2d 673, 689[32] (Mo. banc 1982), cert. den. —— U.S. ——,

103 S.Ct. 770, 74 L.Ed.2d 983 (1983). The statements were made after a voluntary, intentional and knowing waiver of appellant's right to remain silent.

■ Appellant next contends that the trial court erred in denying his motion to suppress the admission into evidence of a Ruger brand .22 caliber rifle. This contention is based on the proposition that the rifle was discovered because the police illegally obtained appellant's statements. Because the police did not violate appellant's constitutional rights in obtaining his statements, the rifle was admissible.

Appellant next accuses the trial court of error in denying his motion in limine and overruling his objections to evidence that appellant was on a public street with a rifle approximately one hour before, and some miles from the scene of, the murder. The point is denied.

■ The state in its case was permitted to show that the appellant was holding a gun or rifle on a street corner at least forty-five minutes to an hour before the crime took place. Appellant had been charged with assault in the first degree, but the record is unclear concerning how the assault charge was connected with having the rifle on the street. The trial court did not permit evidence of the other crime. Therefore, the only evidence before the jury was that appellant was on the street corner holding a rifle, an act which does not constitute a crime under Missouri Statutes. Therefore, there was no evidence of another crime before the jury.

■ In addition, the purpose of the testimony was to refute a portion of appellant's statement in which he asserted that he did not have his rifle until minutes before the shooting of the victim, an assertion which was related to his theory of self-defense. It may be shown that a defendant gave a false statement to officers investigating a crime as evidence of consciousness of guilt. *State v. Burton,* 618 S.W.2d 199, 201 (Mo.App.1981); *State v. Ross,* 606 S.W.2d 416, 425[11, 12] (Mo.App.1980). The

evidence was relevant and there was no error in its admission.

■ Appellant argues that the trial court erred in limiting the scope of his cross-examination because it allowed the state to "dilute" the evidence the state could present by showing only appellant's appearance on the street corner with the rifle, and that this also "diluted" appellant's ability to cross-examine without disclosing the existence of another unrelated criminal charge, the first degree assault. Appellant cites no cases to support his reasoning. The trial court has discretion in determining whether evidence is relevant and material. *State v. Singleton,* 660 S.W.2d 13, 19[14] (Mo.App.1983). That discretion was not abused.

Appellant's fourth point charges trial court error in allowing the state to demonstrate and argue, over defense objection, a "two-bullet hole—one-bullet" theory during final argument. Appellant's fourth point is also denied.

Appellant's complaint concerns a laboratory report made by a state criminalist which stated that two bullet holes found in the collar of victim's leather jacket were made by two different bullets. The question was whether the collar of the jacket had been turned down when the victim was shot so that one bullet would have gone through two layers of leather or whether the collar was turned up so that the two holes would have had to be made by two bullets. The state furnished a copy of the laboratory report to appellant during discovery.

Before the trial a representative of the circuit attorney's staff questioned the criminalist about the possibility that she had reached the wrong conclusion and that the two holes were made by only one bullet. She said she had not reached the wrong conclusion. By that time, because the leather jacket had been handled frequently, it was not possible to make additional tests of the jacket to determine the amounts of lead around the holes for the purpose of deciding whether one or two shots were fired.

The laboratory report was not offered in evidence by the state. Instead, in closing argument the state argued that the two holes were made by only one bullet. Appellant's objection to this argument was overruled.

Appellant's position in relation to this point of error is somewhat confusing. He accuses the state of bad faith, argument without factual support, lack of good faith disclosure, unreasonable inference from the evidence that was disclosed and destruction of physical evidence. Essentially appellant is saying that the state did not comply with the rules of discovery and that its argument was not based on the evidence. The point is not a major one because, in fact, as the other evidence showed, the victim was shot only once in the head behind his ear where the collar was worn.

■■■ The state's argument which appellant complains about was based on the evidence. The jacket was introduced. With the collar turned down an inference could have been drawn that the two bullet holes were made by one bullet. A party may argue any reasonable inference based on the evidence. *State v. Dade,* 629 S.W.2d 418, 420[2, 3] (Mo.App.1981). A prosecutor is allowed wide latitude in his comments. *State v. Turner,* 633 S.W.2d 421, 428[8, 9] (Mo.App.1982). The trial court has considerable discretion in controlling final arguments of counsel and a trial court's rulings will not be reversed unless there is an abuse of discretion. *State v. Moore,* 620 S.W.2d 370, 373[1] (Mo. banc 1981); *State v. Grady,* 649 S.W.2d 240, 245[12] (Mo.App. 1983).

There was other evidence to support the argument of the prosecutor. Only three bullets were fired and one was found in the door. The victim suffered only two wounds, one in the area of the right ear, the other in the chest-abdomen area.

■■■ Appellant's contention that the state violated discovery rules is incorrect. The state provided the defense with a copy of the criminalist's report. It was not necessary for the state to tell the defense that it doubted the results of the test. Nothing in the rules requires this. The state made the decision not to use the report. That decision was a conclusion of counsel based on counsel's opinion concerning the worth of the evidence and was not subject to disclosure. *See* Rule 25.10(A); *State v. Hardin,* 558 S.W.2d 804, 807[5, 6] (Mo.App. 1977).

■■■ Appellant had the criminalist's report. He could have called her as a witness or used the report in any way he saw fit. Moreover, the issue was whether or not appellant fired the shots that killed the victim in self defense. The number of bullets that passed through the coat, whether one or two, had little bearing on the self defense issue under these circumstances, and if there was any relevance at all, the "one-bullet" argument of the state was more compatible with the self defense theory than the "two-bullet" argument of appellant. The trial court did not err in overruling appellant's objection to the "two-bullet hole—one-bullet" argument.

Appellant, in his fifth point, claims error in the granting of the state's motion for a "protective order" prohibiting defense counsel from arguing about a police officer's actions and inaction in seizing a pistol from beside the victim. This point is denied.

Appellant wanted to argue the lack of fingerprints on the handgun which was retrieved from beside the victim by the police. Appellant admits that evidence of the lack of fingerprints on a surface is generally not arguable to a jury. He accuses the seizing officer of contamination of any possible prints and failure to personally preserve and deliver them to the evidence technician.

■■■ "It was not incumbent upon the state to take defendant's fingerprints from the articles he touched or, if taken, to produce them in evidence." *State v. Holmes,* 389 S.W.2d 30, 34[4] (Mo.1965), affirmed 428 S.W.2d 571, 572 (Mo.1968); *see also State v. Simpson,* 611 S.W.2d 556, 560[13, 14] (Mo. App.1981). This court's statement in *State v. Dethrow,* 510 S.W.2d 207, 210[5, 6] (Mo. App.1974) that absence of fingerprint evi-

dence would have some probative value was *obiter dictum* because this court went on to affirm the trial court's exclusion of the state's failure to produce fingerprint evidence on other grounds. The Missouri Supreme Court's decision in *State v. Holmes, supra,* is controlling; therefore, the trial court did not err in prohibiting appellant's counsel from arguing an adverse inference from the state's failure to take fingerprints.

In appellant's sixth and final point he maintains the trial court erred in allowing the state to ask the defendant on cross-examination "Didn't you tell [victim], after you shot him, don't die yet." The point raised must also be considered on a plain error basis, because appellant failed to object at the time the question was asked. This last point is also denied.

The defendant answered in the negative and the case under review is on point with *State v. Butler,* 549 S.W.2d 578 (Mo.App.1977). Any prejudice engendered by the question was removed by the defendant's negative response and the jury instructions. *Id.* at 581. There was no manifest injustice under Rule 29.12(b).

The judgment is affirmed.

KELLY, P.J., and STEWART, J., concur.